**WALCO INVESTMENTS, INC. et al., Plaintiff,**

v.

**Kenneth THENEN, et. al., Defendants.**

**No. 93–2534–CIV.**

United States District Court, S.D. Florida.

Feb. 16, 1995.

Harley S. Tropin, Receiver for Premium Sales Corp., Miami, FL.

Marc Cooper, Cooper & Wolfe, P.A., Miami, FL, for Receiver.

David Berger, Stephen Whinston, Berger & Montagne, P.C., Steering Committee, Philadelphia, PA, Michael A. Hanzman, Hanzman & Criden, P.A., Dean Colson, Joseph M. Matthews, Enid Duany Mendoza, Colson, Hicks, Eidson, Colson, Matthews & Gamba, P.A., Steering Committee, Miami, FL.

Aaron Podhurst, Podhurst, Orseck, Josefsberg, Eaton & Meadow, Miami, FL, for Liaison Entities.

Steve Turner, U.S. Dept. of Justice, Office of the U.S. Trustee, Miami, FL.

Charles Harper, U.S. Sec. & Exchange Com'n, Miami, FL.

Peter Prieto, Ass't U.S. Atty., S.D. Florida, Miami, FL.

Bill Clifton, Clifton & Stengel, Memphis, TN, for Kelly Thomas.

Steve Naturman, Jerry M. Markowitz, Markowitz, Davis and Ringle, Miami, FL, for County Nat. Bank.

Neil Flaxman, Coral Gables, FL, for Mike Flynn.

Paul Singerman, Strook & Strook & Lavan, Miami, FL.

Dawn Steinberg, North Miami, FL, for Premium Sales of Miami, Ltd. and Premium Sales Management, Inc., Jack Yoches.

Mark P. Schnapp, Holly Skolnick, Greenberg, Traurig, Miami, FL, for Deckelbaum defendants.

Jane W. Moscowitz, Baker & Moscowitz, Miami, FL, for PSEC defendants.

Richard E. Brodsky, Jenner & Block, Miami, FL, for Sazant, LSS Financial Services, Inc. and Premium Sales 1990, Inc., and Gen. Partnership of Sherry Walde, Trustee.

David M. Levine, McDermott, Will & Emery, Miami, FL, for Expo Associates, Inc.

Stanley Wakshlag, Akerman Senterfeit Eidson, P.A., Miami, FL, for Capital Bank.

Jeffrey H. Beck, Ruden, Barnett, McClosky, Smith, Schuster & Russell, P.A., Ft. Lauderdale, FL, for DBRN Ltd. Partnership and Meldin, Inc.

Charles Pugatch, Ft. Lauderdale, FL, for Demets.

Ian M. Comisky, Blank, Rome, Comisky & McCauley, W. Palm Beach, FL, Matthew J. Siembieda, Michael D. Shepard, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for Fromer.

Michael R. Levin, Rumberger, Kirk & Caldwell, Orlando, FL.

Larry D. Yogel, Bala Cynwyd, PA, pro se.

Alvin Davis, Steel Hector & Davis, Miami, FL, for Premium S.H. (92), Cimbs Inv. (92), Inc., Hawco Equities, Inc., and Henry and Leslie Weitzman.

William Nortman, Leonard H. Bloom, Nortman & Bloom, P.A., Miami, FL, for K. Thenen.

Hugo L. Black, Jr., Joseph W. Beasley, Jr., Kelly, Black, Black, Byrne & Beasley, P.A., Stephen H. Cypen, Cypen & Cypen, Miami Beach, FL, for Pueblo Intern.

Eric Lee, Jan Douglas Atlas, Atlas Pearlman Trop & Borkson, P.A., Ft. Lauderdale, FL, for Hank Bleier, and HB Investments, Inc., HB Investments, II.

Mel Brink, Livermore, CA.

Malcolm Fromberg, Gary Dumas, Fromberg, Fromberg, Lewis & Brecker, Aventura, FL, for Charlie Valvo.

Joel Hirschhorn, Coral Gables, FL, for Zvi Yuz, Peter Arak, Maccabi Food Corp., Carmel Food Corp., Maccabi Food Miami, Ltd., Carmel Food Miami, Ltd. and Golani Food Miami.

Andrew Cotzin, Broad and Cassel, Miami, FL, for Marvin Biltis, Prestige Inv. Ltd., Miracle Inv. I, Miracle Inv. IA, Miracle Inv. IB, Parkland Inv., Bilmar Capital, and Bilmar Sales, Inc.

Sue Price, Ft. Lauderdale, FL, pro se and for Marathon Enterprises.

Herbert Stettin, Miami, FL, for Malone & Hyde, Inc. and Fleming Companies, Inc.

Reid E. Robinson, Kenneth L. Buettner, McAfee & Taft, Oklahoma City, OK, for Fleming Co., Inc. and Malone & Hyde, Inc.

James F. Gilbride, Gilbride, Heller & Brown, P.A., Miami, FL, for Daniel Morris.

Stanley A. Beiley, Barry D. Hunter, Stuzin & Camner, Miami, FL, for Premium Sales, Purchase, Advantage and Can–Am.

Lawrence M. Schantz, Schantz, Schatzman & Aaronson, Miami, FL, for Stern.

Michael Tarre, Coral Gables, FL, for S. Thenen.

Steven R. Woods, Miller & Woods, West Palm Beach, FL, for Longs Drug Stores of California, Inc.

Fred M. Cohen, Cohen & Bernstein, Rancho Cucamonga, CA, for Shirley.

Isaac J. Mitrani, Mitrani, Rynor & Gallegos, P.A., Miami, FL, Max M. Glass, Phoenix, AZ, for Sherry Walde.

B. Wayne Olivie, Miami, FL, for Dean Henrichs.

Mercer K. Clarke, Clarke & Silverglate, Miami, FL, for Mont Can and Marg.

John K. Aurell, MacFarlane Ausley Ferguson & McMullen, Tallahassee, FL, for Cadwalader, Wickersham and Taft.

Vincent Connelly, Mayer, Brown & Platt, Chicago, IL, Michael Nachwalter, Kenny Nachwalter Seymour, Arnold Critchlow & Spector, P.A., Miami, FL, for Baker and McKenzie.

Edward Moss, Anderson, Moss, Parks & Sherouse, P.A., Mark Hicks, Hicks, Anderson & Blum, P.A., Co–Counsel, Miami, FL, for Harris Mitchell, Harold Sazant, Irwin Altman.

Robert M. Kahn, Kahn & Gutter, Plantation, FL, for Gemi Associates, Ltd. and Gemi Associates II, Ltd.

Scott Trell, Miami, FL, for David Schatia.

Gary S. Brooks, Sparber, Kosnitzky, Truxton, de la Guardia, Spratt & Brooks, P.A., Miami, FL, for County Nat. Bank and Lawrence Robinette.

Steven Eisenberg, Caruana, Gordon, Langan and Eisenberg, P.A., Miami, FL, for Gary Burman, Debbie Burman, Steven Bornstein and Stacy Bornstein.

Daniel L. Silverberg, Los Angeles, CA, for Bernard Schachter, JASAB Inv. and TAJ Inv.

Edward R. Shohat, Bierman, Shohat, Loewy & Perry, P.A., Miami, FL, for Thenen.

S. Alan Stanley, Coconut Grove, FL, for Judith Krovetz.

Steven Mishan, Andrew B. Hellinger, Mishan, Sloto, Hoffman & Greenberg, Miami, FL, for Creditors Committee.

Irving Canner, Bernard W. Sultan, Creditors' Committee, North Miami Beach, FL.

Paul Braid, Coconut Creek, FL, pro se.

Howard I. Weiss, Henry B. Handler, Weiss & Handler, P.A., Boca Raton, FL, for Feinberg.

Bruce J. Berman, Weil, Gotshal & Manges, Miami, FL, for Stanford Trading, Inc.

Marty L. Steinberg, Holland & Knight, Miami, FL, for Fry's Food.

Norman Malinski, Aventura, FL, for Birdman.

Charles H. Lichtman, Charles H. Lichtman & Assoc., P.A., Plantation, FL, for Consol. Fund of America.

Gary D. Fox, James B. Tilghman, Stewart Tilghman Fox & Bianchi, P.A., William C. Hearon, Miami, FL, for Lipson/Stern Partnerships.

Leo S. Schwartz, New York City, pro se.

## ORDER DENYING DEFENDANT CADWALADER, WICKERSHAM & TAFT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT BAKER & MACKENZIE'S MOTION TO DISMISS

MORENO, District Judge.

THIS CAUSE came before the Court upon Defendant Cadwalader, Wickersham & Taft's ("Cadwalader") Motion for Judgment on the Pleadings (docket no. 298), filed on June 24, 1994, and Defendant Baker & MacKenzie's ("B & M") Motion to Dismiss (docket no. 301), filed on June 24, 1994.

THE COURT has conducted a complete review of the motions, responses, replies, the oral argument of counsel on January 11, 1995, and other pertinent portions of the record. It is

ADJUDGED that the motions are DENIED.

### I. LEGAL STANDARD

To obtain a judgment on the pleadings, the moving party must establish that no material issue of fact remains unresolved. *Greenberg v. General Mills Fun Group, Inc.*, 478 F.2d 254, 256 (5th Cir.1973)[1]. The Court must construe the facts presented in the pleadings, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Miami Herald Pub. Co. v. Ferre*, 636 F.Supp. 970, 974 (S.D.Fla.1985).

A court will not grant a motion to dismiss unless the plaintiff fails to prove any facts that would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). When ruling on

---

**1.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well pleaded facts as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *St. Joseph's Hosp., Inc. v. Hospital Corp. of Am.,* 795 F.2d 948 (11th Cir.1986).

The standard of review for judgment on the pleadings is almost identical to the standard used to decide motions to dismiss. *Ferre,* 636 F.Supp. at 974. Thus, for purposes of Cadwalader's Motion for Judgment on the Pleadings and B & M's Motion to Dismiss, the Court will grant them only if it is beyond doubt that Plaintiffs can plead no facts that would support the claim for relief. *SEC v. ESM Group, Inc.,* 835 F.2d 270, 272 (11th Cir.1988) *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988) (citing *Conley v. Gibson*).

## II. BACKGROUND.

Plaintiffs and the class of investors they hope to represent brought this lawsuit against over 100 individuals and entities for the events that led to the collapse of a $500 million dollar investment. The sum of a half-billion dollars was bound for the grocery diverting business. Diverters purchase goods at off-market prices in one location and sell them to wholesale or retail customers at another location for profit. The eventual failure of the alleged "Ponzi" scheme resulted in losses of millions of dollars which triggered this complaint.

Plaintiffs filed the Second Amended and Consolidated Class Action Complaint (docket no. 215) on May 13, 1994. Only four counts (of the 16–count complaint), are applicable to Cadwalader's and B & M's motions. Count XIII is by Robert E. Schack, Eleanor Schack, Robert E. Schack, P.A. and Palmer Hughes on behalf of the Sazant Subclass under Section 10b of the Securities Exchange Act and Rule 10b–5 against B & M. Count XIV is by Plaintiff Claire Warren and the Stern/Lipson Subclass under Section 10b of the Securities Exchange Act and Rule 10b–5 against Cadwalader. Count XV is by Robert E. Schack, Eleanor Schack, Robert E. Schack, P.A., Palmer Hughes, and the Sazant Subclass for common law negligence against

B & M. Finally, Count XVII is by Claire Warren and the Stern/Lipson Subclass for common law negligence against Cadwalader.

Cadwalader and B & M (collectively, "the law firms") provided professional legal services to Funding Entity Defendants and their principals. Although the law firms filed separate motions, their arguments are identical and will be treated, for analytical purposes, as a single motion.

## III. LEGAL ANALYSIS

Cadwalader and B & M make two fundamental arguments in support of their motions: first, they argue that they are not liable under Section 10(b) and Rule 10b–5 because they did not owe any duty to Plaintiffs and that, assuming such a duty did exist, any economic loss that may have been suffered by Plaintiffs was not proximately caused by any alleged misrepresentations or omissions by Defendants; second, they contend that they are not liable for professional malpractice because, subject to a limited exception not applicable here, Florida law does not recognize a cause of action for professional malpractice by a third-party who was not a client of the defendant law firm.

The Court will address each argument in turn.

### A. Liability Under Section 10(b) and Rule 10b–5

■ In order to state a claim for violations of Section 10(b) and Rule 10b–5 the plaintiff must normally show the following: (1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) on which the plaintiff relied, (5) that proximately caused his injury. *Ross v. Bank South, N.A.,* 885 F.2d 723 (11th Cir.1989). Defendants suggest that Plaintiffs' complaint cannot withstand their motions because it fails to (1) allege any facts necessary to show that a fiduciary relationship existed between the law firms and Plaintiffs such that a duty to disclose material information would arise; and (2) even assuming that a duty to disclose did exist, the failure to do so was not the proximate cause of Plaintiffs' injuries.

### I. Whether Cadwalader and B & M Had a Duty to Disclose Material Information to Plaintiffs

■ Both parties submit in their pleadings that the central issue before the Court is whether the law firms owed a duty to Plaintiff investors. The Eleventh Circuit has held that a defendant's misstatement or omission is actionable under section 10(b) and Rule 10b–5 only if the defendant had a duty to disclose negative information to the plaintiff. *See Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1043 (11th Cir.1986), *cert. denied*, 480 U.S. 946, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987). Such a duty to disclose may exist "where the law imposes special obligations, as for accountants, brokers, or other experts, depending on the circumstances of the case." *Woodward v. Metro Bank*, 522 F.2d 84, 97 n. 28 (5th Cir.1975).

■ The Eleventh Circuit has also established a set of factors that a court is to weigh in determining whether a duty to disclose negative information to the public exists. The factors to be considered include, but are not limited to,

> the relationship between the plaintiff and defendant, the parties' relative access to the information to be disclosed, the benefit derived by the defendant from the purchase or sale, defendant's awareness of plaintiffs' reliance on defendant in making its investment decision, and the defendant's role in initiating the purchase or sale.

*First Virginia Bankshares v. Benson*, 559 F.2d 1307, 1314 (5th Cir.1977). In *Rudolph*, the Court also found important the extent of the defendant's knowledge and the significance of the misstatement or omission. Thus, "a defendant who *intentionally* did not reveal what he *knew* to be fraud might be more reasonably expected to speak out than a defendant who merely failed to learn of a material but ambiguous omission." *Rudolph*, 800 F.2d at 1043. Plaintiffs' complaint alleges that the law firms were retained to "ensure compliance with state and federal securities laws and to prepare Offering Documents to be relied upon by" prospective investors (Compl. ¶¶ 274, 287). Furthermore, the complaint alleges that the law firms knew the Offering Documents "were designed to and in fact would induce investors" to purchase the securities at issue (Compl. ¶¶ 276, 289).

■ Cadwalader and B & M argue that they had no duty to detect false or misleading statements or omissions in the private placement memorandum. The law firms submit that whether they had a duty to disclose depends on whether they had a fiduciary relationship with Plaintiffs. In *In re Cascade Int'l Securities Litigation*, 840 F.Supp. 1558, 1564 (S.D.Fla.1993), Judge Lenore C. Nesbitt held that because the

> Plaintiffs failed to demonstrate any kind of fiduciary relationship between the defendant law firms and Plaintiffs, no duty to disclose exists, and, therefore, no action for securities fraud can be maintained against the defendant law firms.

Cadwalader and B & M suggest that the only fiduciary relationship that existed was between themselves and their clients, not Plaintiff investors. Thus, because no fiduciary relationship existed between Plaintiffs and the law firms, no duty was owing from the law firms to Plaintiffs, and Plaintiffs therefore cannot maintain an action for securities violations.

Plaintiffs counter that the law firms should be held liable for their participation because they drafted solicitation documents that they knew would be relied upon by investors. Plaintiffs contend that it is for this reason that the law firms owed a duty to the investors. Plaintiffs attempt to distinguish *Cascade* on the ground that: first, the plaintiffs there failed to allege any fiduciary relationship with the law firms; and second, here the law firms actively solicited or prepared solicitation documents. Plaintiffs suggest that one who authorizes and directs another's fraudulent conduct is himself liable for fraud. In *U.S. Oil & Gas Litig.*, 1988 WL 28544, 1988 U.S.Dist. LEXIS 2217 (S.D.Fla. Feb. 8, 1988), Judge William M. Hoeveler denied a law firm's motion to dismiss, stating that the lack of a fiduciary or formal relationship between a knowing participant in the fraud and the injured party is not a barrier to liability. Thus, Plaintiffs argue that because

Cadwalader and B & M prepared solicitation documents that they knew were going to be relied upon by investors, they had a duty to ascertain and disclose material facts that were omitted or misrepresented in the private placement memorandum. Consequently, Plaintiffs suggest, failure to do so makes them liable for Section 10(b) and Rule 10b–5 violations despite the lack of privity.

Initially, the Court notes that it is concerned with the issues raised in *Cascade* and its effect on the instant litigation. It should also be noted that the *Rudolph* case (establishing a set of factors to determine whether a duty to disclose negative information exists) involved the duty to disclose where the defendant was an accountant. Thus, while *Rudolph* may be cited for the proposition that "other experts" can owe a duty to disclose under certain circumstances, the Eleventh Circuit has not specifically created this duty to disclose on the part of an attorney. That does not mean, however, that such a duty can never exist. Thus, taking the complaint's well pleaded facts as true, Plaintiffs have alleged that Defendants were aware that investors would be relying upon and induced to purchase securities based upon the information contained in the private placement memorandum. This knowledge may be sufficient to create a relationship between the law firms and Plaintiffs, as contemplated by *First Virginia Bankshares* and *Rudolph*, which would give rise to a duty to disclose.

The Court notes that in *Cascade*, Judge Nesbitt found that the complaint failed to support any of the *First Virginia Bankshares* or *Rudolph* factors. Accordingly, Judge Nesbitt granted the law firms' motion to dismiss. While the Court does not have before it the specific allegations of the *Cascade* complaint, Plaintiffs here have potentially raised the existence of a fiduciary relationship between themselves and the law firms.

The law firms rely on a Fifth Circuit case, *Abell v. Potomac Insurance Company*, 858 F.2d 1104, 1125 (5th Cir.1988), for the proposition that lawyers who have a duty to their clients to ensure compliance with securities regulations do not have a duty to the invest-

ing public in general. While Plaintiffs here allege that the law firms were hired to comply with securities regulations which created the duty to Plaintiff investors, the *Abell* decision was the appellate result of a judgment on a jury verdict. Thus, the case was fully developed factually prior to its ruling.

The Court does not find Plaintiffs' argument under *U.S. Oil & Gas Litigation* to be persuasive. The law firms correctly point out that the lawyer in *U.S. Oil & Gas Litigation* was alleged to have been an "active participant" and a "mastermind" of the fraudulent scheme. There is no such allegation in the present complaint. However, as the Court is denying the law firms' motions, future discovery may reveal facts that would make Judge Hoeveler's opinion in *U.S. Oil & Gas Litigation* applicable to the instant case.

Of most importance, however, this Court finds that whether a duty to disclose exists depends upon the circumstances of each individual case and, therefore, it is inappropriate to rule on this issue at the present stage in the litigation. *See Rudolph*, 800 F.2d at 1043. Because *Rudolph* does not explicitly exclude lawyers from potentially having a duty to disclose, more factual development is necessary in order to properly determine if in fact a fiduciary relationship existed. This is particularly true in this extremely complex litigation. The Court notes, however, that the *Cascade* opinion is a significant obstacle in Plaintiffs' path and that, without more facts detailing a fiduciary relationship between the law firms and Plaintiffs, summary judgment may be appropriate.

Cadwalader and B & M also argue that after *Central Bank of Denver v. First Interstate Bank of Denver, N.A.*, — U.S. —, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), a lawyer can only be liable for his or her own misstatements or omissions. *Central Bank of Denver* eliminated aiding and abetting liability in securities cases. However, the Supreme Court did conclude that

> [a]ny person or entity, including a lawyer, ... who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable under 10b–5,

assuming all of the requirements for primary liability under Rule 10b–5 are met. *Id.* at ——, 114 S.Ct. at 1455. The law firms suggest that they drafted the private placement memorandum on behalf of the Partnerships and as attorneys for the Partnerships and their managing general partner. It follows, the law firms suggest, that the private placement memorandum are the clients' documents and not those of the law firms. In *Cascade,* the court granted the law firms' motion to dismiss, finding that the law firms' preparation of public reports, registration statements, prospectuses and Form 10s for a corporation and the law firms' drafting of press releases and letters to the shareholders to deter the dropping of the price in stock were not affirmative representations by the law firms; rather, the Court concluded, they were the representations of the client. The law firms again suggest that *Cascade* is directly on point and that any representations contained within the private placement memoranda are representations of their clients and not of themselves. Cadwalader and B & M conclude that, if the private placement memoranda contain any misstatements or omissions, they are the misstatements or omissions of their clients, the Funding Entities.

Although the parties do not discuss whether the holding of *Central Bank of Denver* is to be retroactively applied, the Court finds that Plaintiffs have sufficiently alleged facts to survive the law firms' motions under this recent case. The Court does not refute the cases cited by Cadwalader and B & M for the proposition that lawyers who merely assist in drafting offering documents do not commit securities violations because of any misstatements or omissions in the offering document. However, further factual development on what the law firms knew and when they knew it is necessary.

The Court concludes that this case needs to be examined through its own facts and circumstances. Although a motion for summary judgment may be warranted ·in the future, at this stage of the litigation, additional discovery and fact-finding must occur to ensure that all persons who may be sub-ject to liability under the law are not hastily dismissed.

## II. Proximate Cause of Plaintiffs' Injuries

In an action under section 10(b), the plaintiff must prove "not only that, had he known the truth, he would not have acted, but in addition that the untruth was in some reasonably direct, or proximate, way responsible for his loss." *Huddleston v. Herman & MacLean,* 640 F.2d 534, 544 (5th Cir.1981), *aff'd in part, rev'd in part,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). Thus, Plaintiffs must prove both transaction causation and loss causation. *Currie v. Cayman Resources Corp.,* 835 F.2d 780 (11th Cir. 1988). Defendant law firms argue that the proximate cause of Plaintiffs' investment losses were the result of mismanagement and looting of the Premium partnerships. They contend that it was not the result of the authoring of the private placement memorandum by the law firms. Defendants argue that the complaint merely alleges that the private placement memorandum:

(1) Misrepresented that the offering was exempt from registration under federal and state securities laws. (Compl. ¶ 291);

(2) Omitted to state the "substantial probability" that the offering would be integrated with offerings by other funding entities. (Compl. ¶ 293(a)); and

(3) Omitted to state that companies unrelated to the Premium Corporations for which Thenen and Morris had served as officers and directors had been in bankruptcy proceedings in the 1980s and that Morris had filed for personal bankruptcy in 1982 and Thenen was a defendant in a federal securities case brought in 1988 and settled in 1992. (Compl. ¶¶ 112–115, 142, 293(b)).

Cadwalader and B & M acknowledge that, had these facts been known, Plaintiffs may not have purchased interest in the Partnerships. However, Defendants argue that this is merely transaction loss and not sufficient to establish loss causation. The losses suffered by Plaintiffs, according to Defendants, were caused by the improper release of the Partnership's funds and their use to perpetu-

ate a massive fraud scheme. The matters alleged to have been misrepresented or omitted in the private placement memorandum were not the proximate cause of Plaintiffs' actual investment losses.

Plaintiffs respond that at this stage all that is required to go forward are allegations that, as a direct and proximate result of Cadwalader's and B & M's wrongful conduct and material omissions, Plaintiffs were damaged. Such allegations have been made (*See* Compl. ¶¶ 294, 297). In addition, despite the law firms' argument to the contrary, Plaintiffs suggest they have alleged loss causation. The purpose of the loss causation requirement, according to Plaintiffs, is to prevent Defendants from becoming guarantors of a specific securities' economic performance by allowing recovery in situations where the matters misrepresented or omitted have nothing to do with the reasons for the securities' decline in value. Thus, the requirement for loss causation is that the matters misrepresented must touch upon the reasons for the investment's decline in value. *Huddleston,* 640 F.2d at 549. Plaintiffs argue that the exact facts misrepresented and omitted by Cadwalader and B & M more than touch upon the reason for Plaintiffs' losses.

Although discovery may prove otherwise, Plaintiffs have alleged that the law firms' misstatements and omissions were the direct and proximate result of their losses. Most important in this regard is the fact that Defendants allegedly failed to include background information on Mr. Thenen and Mr. Morris that, not only would have alluded investors to their suspect investment schemes, but may have prevented the fraud itself; if investors refused to invest because of the principals involved, no fraudulent scheme whatsoever could have occurred. Again, this is an area that needs further factual development. Accordingly, motions for judgment on the pleadings and to dismiss are inappropriate at this time.

## B. Liability for Professional Malpractice

■ Under Florida law, a plaintiff in a legal malpractice suit is required to prove (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3)

that such negligence resulted in and was the proximate cause of loss to the plaintiff. *Maillard v. Dowdell,* 528 So.2d 512 (Fla. 3d DCA 1988); *Ginsberg v. Chastain,* 501 So.2d 27 (Fla. 3d DCA 1986). Florida courts have generally limited an attorney's liability for negligence in the performance of his professional duties to clients with whom the attorney shares privity of contract. *Angel, Cohen & Rogovin v. Oberon Inv.,* 512 So.2d 192 (Fla.1987). To bring a legal malpractice action, the plaintiff must either be in privity with the attorney, wherein one party has a direct obligation to another, or, alternatively, the plaintiff must be an intended third-party beneficiary. *Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner,* 612 So.2d 1378 (Fla.1993). Defendant law firms contend that Plaintiffs do not fit in either category.

■ The law firms argue, and Plaintiffs concede, that there was no privity between the two parties. Thus, for Plaintiffs to bring a suit for professional malpractice they must fall under the limited exception to the privity requirement. This exception applies where "it was the apparent intent of the client to benefit a third party." *Angel, Cohen,* 512 So.2d at 194. The exception is not limited to but is most clearly exemplified in the area of will drafting. Defendants argue that because Plaintiffs do not fit within the limited exception to the privity requirement as intended third-party beneficiaries, they do not have standing to bring a negligence action for professional malpractice.

Cadwalader and B & M cite to Florida law for the proposition that a purchaser of securities is not a third-party beneficiary of the seller's attorney-client relationship. *Gutter v. Wunker,* 631 So.2d 1117 (Fla. 4th DCA 1994); *Brennan v. Ruffner,* 640 So.2d 143 (Fla. 4th DCA 1994). In *Gutter,* lawyers were hired to prepare an offering prospectus and other legal documents for a restaurant venture which ultimately failed. The Court found that plaintiff investors had failed to allege an attorney-client relationship and therefore affirmed the dismissal of the amended complaint. Defendants contend that Plaintiffs did not and could not allege an attorney-client relationship in the instant case.

■ Plaintiffs assert and the Court agrees that the *Gutter* decision, although troublesome in its holding for our purposes here, lacks sufficient factual development to lend much guidance to the issue at hand. Failure to allege an attorney-client relationship, in and of itself, seems insufficient grounds to grant dispositive motions at such an early stage.

In *Brennan,* the court refused to expand attorney liability where a shareholder brought suit against the corporation's lawyer. *Brennan* is immediately distinguishable as it was decided at the summary judgment stage. Moreover, the court primarily relied on the plaintiff's concession that an inherent conflict existed between himself, as an individual shareholder, and the corporation. Although the court noted that the third party beneficiary exception to the privity requirement in legal malpractice actions is generally limited to will drafting contexts, the case does not wholesale preclude an action by an investor against a law firm hired to represent the seller of securities.

Defendant law firms argue that there can be no intent to benefit Plaintiffs in the instant case because their clients' interests were adverse or potentially adverse to Plaintiffs' interests. In fact, citing *Angel, Cohen,* Defendants suggest that a non-client can never be an intended beneficiary of legal services when there is a conflict of interest between the non-client and the lawyer's client. Cadwalader and B & M contend that a distinct conflict of interest was present here as their clients were selling securities and Plaintiffs were buying those securities. However, the law firms' blanket statements that a seller and purchaser of stock have conflicting interests, without more, is insufficient to support their motions. Accordingly, while this argument may be appropriate at a later stage in the litigation, it is not appropriate now.

Finally, Cadwalader and B & M seem to suggest, citing *Espinosa,* that the Florida Supreme Court has limited the privity exception to will drafting cases. However, Plaintiffs correctly point out that while the *Angel, Cohen* case noted that the most obvious example of an intent to benefit a third party

arises in the will drafting context, this example is a "floor and not a ceiling" in determining whether one is an intended beneficiary. *See Greenberg v. Mahoney, Adams & Criser,* 614 So.2d 604 (Fla. 1st DCA 1993); *Winston v. Brogan,* 844 F.Supp. 753 (S.D.Fla.1994). Plaintiffs rely on the Restatement (Second) of Torts and *First Florida Bank, N.A. v. Max Mitchell & Company,* 558 So.2d 9 (Fla. 1990) for the proposition that the law firms may be held liable for supplying false information to the investors who they knew would rely upon their work if they failed to exercise reasonable care and competence in obtaining and communicating the information. Thus, Plaintiffs argue that where professionals know that people will rely upon their work product, the privity requirement is relaxed and a duty of care imposed. While acknowledging that the cases cited involve accountants, Plaintiffs suggest that this duty of care is imposed upon all professionals, attorneys included.

The *Max Mitchell* case is clearly distinguishable from the facts presented to this Court. However, as no Florida court has outright held that the limited privity exception is applicable only in will drafting cases, Plaintiffs' reliance on *Max Mitchell* is not without merit. Florida courts may not want to expand malpractice liability for lawyers in securities cases. However, at this stage of the litigation, more facts need to be known before a proper decision can be made. It is without doubt that the intent to benefit a third party is usually quite clear in will drafting cases. Although the intent to benefit Plaintiffs in the present case is not as apparent, it still may have existed. This is particularly true where the Court accepts Plaintiffs' allegations as true, as it must. Accordingly, Cadwalader's Motion for Judgment on the Pleadings and B & M's Motion to Dismiss the professional malpractice claims are denied.

### C. Public Policy Concerns

The Court is well aware of the law firms' concern that allowing this case to proceed will result in the requirement that law firms must not only represent but also investigate their clients. However, nothing in this opin-

ion should be construed to impose such requirements on law firms. While a law firm generally represents only its client, under certain situations, a duty may arise to third parties whereby a law firm cannot merely be a conduit for its client's illegal activity. This is not to suggest that this was the case here. However, complex securities litigation may often involve multiple violators, *see Central Bank of Denver,* —— U.S. at ——, 114 S.Ct. at 1454; thus, it is extremely important that at least some factual development be allowed to occur. The Court recognizes that in certain situations law firms will have to expend significant amounts of money in the course of discovery. But this does not mean that law firms in securities violations cases can never have the case dismissed under Rule 12 of the Federal Rules of Civil Procedure. The circumstances of each case need to be taken into account so that all proper defendants remain in the case. The Court believes that this is the best rule to follow in the interest of justice.

### CONCLUSION

Plaintiffs have sufficiently raised allegations that may give rise to a duty to disclose on the part of the law firms under section 10(b) and Rule 10b–5. It is not clear that Plaintiffs can distinguish the facts of this case from those set forth in *Cascade*. However, more factual development is necessary in order to determine whether the circumstances of this case give rise to a duty to disclose as contemplated by *Rudolph* and *First Virginia Bankshares*.

In addition, Florida law does not outright preclude a law firm from being liable to intended third party beneficiaries for professional malpractice in securities litigation. Thus, the facts of this case need to be developed to help determine whether Plaintiffs were in fact third party beneficiaries of the law firms' relationship with their clients.

For the reasons detailed above, it is,

ADJUDGED that Cadwalader's Motion for Judgment on the Pleadings and B & M's Motion to Dismiss are DENIED.

DONE AND ORDERED.