Jeffrey E. CAGAN and Cagan Realty,
Inc., Petitioners–Appellees,

v.

MUTUAL BENEFIT LIFE INSURANCE
COMPANY, Respondent–Appellant.

Nos. 93–3274, 93–3517 and 93–3518.

United States Court of Appeals,
Seventh Circuit.

Argued May 10, 1994.

Decided June 30, 1994.

Stephen B. Diamond, Lawrence W. Schad, James Shedden, Beeler, Schad & Diamond, David A. Genelly, Joanne M. Hershkowitz, Fishman & Merrick, Chicago, IL, for plaintiffs.

Steven P. Handler, McDermott, Will & Emery, Martha W. Berzon, Schwartz, Cooper, Greenberger & Krauss, Stephen Ray, Stein, Ray & Conway, Chicago, IL, for Earl D. Gordon, KFB Securities, Inc., Financial Concepts Ltd., Gordon Management Services, Inc., Mega Media Advertising, Greater Metropolitan Realty, Illinois Investors Fund, Continental Investment Sec. Enterprises, Investor Services Unlimited.

Steven P. Handler, McDermott, Will & Emery, Brad L. Jansen, Martha W. Berzon, Schwartz, Cooper, Greenberger & Krauss, Stephen Ray, Stein, Ray & Conway, Chicago, IL, for Kenneth F. Boula.

Thomas I. Matyas (argued), Joseph R. Podlewski, James Dash, Rosenthal & Schanfield, Chicago, IL, for Mutual Ben. Life Ins. Co. in Rehabilitation.

Hal R. Morris, Michael R. Turoff, Arnstein & Lehr, Chicago, IL, for Southmark Corp.

Lawrence W. Schad (argued), James Shedden, Heidi Joanne Walter, Beeler, Schad & Diamond, David A. Genelly, Fishman & Merrick, Chicago, IL, for Jeffrey Cagan, Cagan Realty, Inc.

Arthur L. Klein, Hal R. Morris, Michael R. Turoff, Arnstein & Lehr, Chicago, IL, for Southmark Corp.

Before ESCHBACH, EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Earl Dean Gordon and Kenneth Boula are in federal prison for fraud. *United States v. Boula,* 932 F.2d 651 (7th Cir.1991); *United States v. Boula,* 997 F.2d 263 (7th Cir.1993). Their endeavors continue to reverberate through the courts. So far we have issued four opinions in ancillary litigation. *Gaskill v. Gordon,* 27 F.3d 248 (7th Cir.1994); *Gaskill v. Gordon,* 7 F.3d 238 (7th Cir.1993) (table); *Southmark Corp. v. Cagan,* 999 F.2d 216 (7th Cir.1993); *Southmark Corp. v. Cagan,* 950 F.2d 416 (7th Cir.1991). Today's is the fifth. District courts have penned at least a dozen more.

Most of these opinions deal with efforts to conserve, for the benefit of victims, the assets Gordon and Boula owned at the time they were nabbed. Creditors did not commence bankruptcy proceedings; instead a district judge appointed a receiver to marshal assets that could be distributed to the plaintiffs in litigation pending against Gordon and Boula. Receiver Jeffrey Cagan and his firm Cagan Realty have done what they could, but the assets were not in great shape—and they had other claimants. Our little corner of the imbroglio concerns the Governor's House apartment complex in University Park, Illinois. Cagan spent more than $350,000 to satisfy the local housing code and try to make the property profitable. The attempt failed, and Cagan stopped making payments on the mortgage to Mutual Benefit Life Insurance Company, which then sought to replace Cagan with a foreclosure receiver under state law (and eventually to foreclose). The district court delayed that procedure for nearly a year while it had under advisement the question whether the cost of the improvements is a charge against the property. Eventually the court answered "yes," see 831 F.Supp. 631 (N.D.Ill. 1993); 1993 WL 64642, 1993 U.S. Dist. Lexis 2888, and permitted Mutual Benefit to displace Cagan with its chosen receiver. Foreclosure proceedings are under way in state court. Mutual Benefit appeals from the district court's declaratory judgment that Cagan has a lien of approximately $365,000, superior to Mutual Benefit's interest, that can be satisfied out of proceeds generated by the eventual sale. We have jurisdiction under 28 U.S.C. § 1291 because the district court's decision concludes the dispute between Cagan and Mutual Benefit.

■ Mutual Benefit's principal contention is that an equity receiver steps into the shoes of the owner and therefore cannot obtain a lien for the cost of improvements superior to the interest of the first mortgagee. Our most recent opinion with the title *Gaskill v. Gordon* disposes of that contention adversely to Mutual Benefit, and we have nothing to

add to our colleagues' analysis of the question. We anticipate that Mutual Benefit may claim protection from the other panel's observation that Southmark Corporation, the lender on the parcels involved in that proceeding, acquiesced in Cagan's receivership, while Mutual Benefit contends that it protested at the outset, only to be denied the right to intervene on the ground that its interests were fully protected. Mutual Benefit acquiesced the same way Southmark did, however, by not seeking to displace Cagan with a receiver of its own choosing. Appointment of a receiver was a default under the Mutual Benefit mortgage. For years, Mutual Benefit was content to collect monthly payments without declaring a default. Southmark protested more loudly, trying to foreclose its interests. If Southmark nonetheless was deemed to acquiesce, so did Mutual Benefit.

■ Mutual Benefit also contends that it is entitled to damages for the time during which it was barred from appointing a foreclosure receiver. We agree with Mutual Benefit that the district court erred in issuing the injunction. The court should have permitted Mutual Benefit to transfer possession to the foreclosure receiver on demand, subject to an undertaking to pay Cagan whatever amount the judge later determined was owed him. But the district court did not require Cagan to post an injunction bond, and in all but exceptional cases the lack of an injunction bond means the unavailability of damages for wrongful injunction. *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 770 n. 14, 103 S.Ct. 2177, 2186 n. 14, 76 L.Ed.2d 298 (1983); *Russell v. Farley*, 105 U.S. 433, 437, 26 L.Ed. 1060 (1882). (On being appointed as receiver Cagan posted a fidelity bond, a different creature entirely.) Ours is not an exceptional case. Mutual Benefit did not remind the district court of the need for a bond under Fed.R.Civ.P. 65(c), did not ask us to stay the injunction, and to this day has not attempted to quantify the damages from the delay. Mutual Benefit seems to think that the damages are the gross rentals paid by tenants of Governor's House during the period it was barred from appointing a foreclosure receiver, but this is nonsense. Any manager of the property needed to pay for fuel, electricity, maintenance, and so on, out of gross receipts; Mutual Benefit has not attempted to establish that Governor's House had a positive cash flow during the delay, and therefore it has not established injury.

■ Cagan established to the district court's satisfaction (and ours) that the expenditures in question were prudent, if not legally mandatory. Indeed, his evidentiary showing was unopposed. Mutual Benefit replies that it never had a chance to offer opposing evidence (and that the district court accordingly violated the due process clause), but the assertion is incorrect. Mutual Benefit never sought to take discovery. Cagan submitted proofs by way of affidavit; Mutual Benefit could have replied in kind or demanded a hearing to take testimony, but it did neither. Perhaps it was waiting for an invitation from the district court, but lawyers must recognize that busy judges wait for motions and oral requests; litigants who remain passive will find that the case has passed them by.

■ Elsewhere in the law, it is common to give priority to the costs of repairs. A trustee in bankruptcy (the closest parallel to the equity receiver) would recover such expenses as of course under 11 U.S.C. § 506(c). Mechanics' and materialmen's liens serve the same function. It is accordingly startling to learn that Mutual Benefit believes that the receiver must stand in line behind its mortgage. Its protest that if the repairs *really* improved the value of Governor's House by the amount expended, then the receiver should be willing to take a second lien, reflects ignorance of the economics of these transactions. Mutual Benefit's loan has a principal amount of $1.2 million. Suppose that, when Cagan took possession, Governor's House was worth $600,000, and Cagan had to invest $400,000 to comply with the housing codes. Consider two possibilities: (a) the $400,000 investment preserved the capital value of the property, which otherwise would have fallen to zero; (b) the $400,000 investment increased the value by $600,000, to $1.2 million. In case (a), Mutual Benefit gets $200,000 after a sale, which exceeds the $0 it would have received if the property had

been abandoned. In case (b), the lender gets a net of $800,000 after a sale. In both cases, repairs make the lender better off; yet in both cases giving the lender a first lien would leave the receiver with nothing to show for a $400,000 investment, and accordingly would ensure that such investments are not made. We have assumed that the starting value of the property was less than $1.2 million. But if it equaled or exceeded the value of the loan, the lender could (and should) have foreclosed at the outset, leaving the plaintiffs in the fraud action with the residue. Only if Cagan's repairs were worth less than the amount paid to make them would giving the receiver a prior lien make Mutual Benefit worse off. No evidence suggests that Cagan's work diminished the net value of Governor's House to Mutual Benefit.

Doubtless there is a risk. A receiver may be tempted to play double-or-nothing, knowing that the investment is safe because he will receive a first lien, and reasoning that if extensive repairs make the property more valuable, his beneficiaries will get the whole increment, while if the plan of renovations fails, the lender will bear the whole cost. This is functionally equivalent to the conflict between debt and equity in any corporate structure, and the risk is aggravated when the manager (here, the receiver) is playing a one-shot game, not worried about reputational interests or raising more capital. What is missing, however, is *evidence* that the receiver took advantage of this structure of incentives and made imprudent investments. Mutual Benefit's remaining arguments do not require separate analysis.

AFFIRMED.