Paul **GASKILL** and Alan L. **Hess**, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Earl Dean **GORDON** and Kenneth F. **Boula**, Defendants.

No. 88 C 3404.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 30, 1996.

Stephen B. Diamond, James S. Shedden, Lawrence Wiley Schad, Beeler, Schad & Diamond, P.C., David Albert Genelly, Joanne Mae Hershkowitz, Fishman & Merrick, P.C., Chicago, IL, for plaintiffs.

Thomas Ivan Matyas, Shefsky, Froelich & Devine, Ltd., Chicago, IL, for Mutual Benefit Life Insurance Company, in Rehabilitation, appellant.

Michael R. Turoff, Hal R. Morris, Arnstein & Lehr, Chicago, IL, for Southmark Corporation intervenor.

Steven P. Handler, McDermott, Will & Emery, Martha W. Berzon, Schwartz, Cooper, Greenberg & Krauss, Steven G. M. Stein, Stephen E. Ray, Stein, Ray & Conway, Chicago, IL, for defendants.

Lawrence Wiley Schad, Beeler, Schad & Diamond, P.C., David Albert Genelly, Fishman & Merrick, P.C., Chicago, IL, for Jeffrey Cagan, Cagan Realty Inc., receivers.

John Michael Touhy, Mayer, Brown & Platt, Chicago, IL, for Travelers Insurance Company, proposed.

### *MEMORANDUM OPINION AND ORDER*

ANN CLAIRE WILLIAMS, District Judge.

On December 11, 1995, this court approved an award to the receiver, attorneys, and accountants ("the professionals") in this action. The court awarded $6,915,480 in fees and $850,420 in costs. Dissatisfied with this award, the professionals ask the court to reconsider its order and increase their fee payment. For the reasons set forth below, the motion to reconsider is granted in part.

### *Background*

The fee petition underlying this motion for reconsideration arises out of a class action brought against Earl Gordon and Kenneth Boula for their operation of a fraudulent investment scheme. In a classic "pyramid" or "Ponzi" scheme, they convinced thousands of investors to purchase interests in phony or unprofitable real estate partnerships, paying off old investors with money from new investors.

This case was originally filed as a class action lawsuit in April 1988. (Pet.Mem. at 4.) The 2700 class members sought to regain $51,635,000 they had invested with Gordon and Boula. (Pet.App.Ex. 2 at 5–6; Ex. 6 at 2.) Three months later, this court imposed a receivership to administer the assets recovered from Gordon and Boula's scheme. (Pet. Mem. at 4.) The court appointed Jeffrey Cagan as the receiver and authorized him to hire accountants. (*Id.* at 5.) The receivership order also appointed the class lawyers to serve as the receiver's counsel. (Aug. 15, 1995 Fee Pet. at 15.)

Almost eight years of litigation in this case consumed the time and energy of several courts. *See Cagan v. Mutual Benefit Life Ins. Co.*, 28 F.3d 654, 655 (7th Cir.1994) (noting the protracted history of this litigation). During those eight years, the receiver, his attorneys and accountants recovered much of Gordon and Boula's assets and ill-gotten profits. These assets—consisting of cash, businesses, rental properties, personal residences and undeveloped lots—were liquidated into $43,697,000 worth of cash. (Fee

Pet. at 3–4, 19–20; Receiver's Rpt. at 5, Table 1.)

Of the $43,697,000 recovered, the receiver allotted $22,741,000 to pay various secured and unsecured creditors. (Receiver's Rpt. at 6, Table 2.) These payments were necessary to extinguish liens against assets so properties could be sold and the proceeds distributed to the plaintiff class of investors. After these debts were paid, $20,956,000 remained in a fund held by the receiver. (Receiver's Rpt. at 3, 6.)

Previously, the court distributed $8,700,000 to the plaintiff class of investors and conditionally approved $5,877,459 in professional fees plus $681,358 in costs.[1] By December of last year, when the professionals filed their final fee petition, $5,697,183 remained in the fund held by the receiver. (Mem.Opinion & Order dated Dec. 11, 1995 at 3.)

On December 11, 1995, this court ruled on the professionals' final fee request. That order approved a total award to the professionals of $6,915,480 in fees and $850,420 in costs. (Mem.Opinion & Order dated Dec. 11, 1995 at 12.) The court also awarded the two named plaintiffs incentive awards in the amount of $6,000 each. Finally, the court directed the receiver to distribute the remainder to the class members. The professionals now ask the court to reconsider this distribution and increase their fee award.

### *Analysis*

At the outset, the court notes that, to date, the court has awarded the professionals roughly 70% of the full $10,068,579 they have requested over the last eight years. Nevertheless, the professionals are dissatisfied with their award, and insist that they are entitled to more.

██ Under the traditional American rule, litigants must pay their own attorneys fees. Courts do not award attorneys' fees unless there is some statutory or contractual authorization to do so. *Hall v. Cole*, 412 U.S. 1, 4–5, 93 S.Ct. 1943, 1945–46, 36 L.Ed.2d 702 (1973). Aside from statutory and contractual circumstances, there are a few narrowly de-

---

1. The interim fee petitions submitted by the professionals were all conditionally granted in full.

fined exceptions to the American rule under which a federal court may award attorneys fees. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (citing *Alyeska Pipeline Service Co. v. Wilderness Soc.,* 421 U.S. 240, 259, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975)). The most common exception, is the "common fund doctrine," under which a court may award fees where a lawyer's efforts created, preserved, or increased the value of a fund for the benefit of others. *Chambers,* 501 U.S. at 45, 111 S.Ct. at 2133; *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 393–94, 90 S.Ct. 616, 626–27, 24 L.Ed.2d 593 (1970). The purpose of allowing fees to be paid from a common fund is to spread the costs of litigation proportionately among the class members benefitted by the lawsuit. *Hall,* 412 U.S. at 5, 93 S.Ct. at 1946; *see SEC v. First Securities Co. of Chicago,* 528 F.2d 449, 454 (7th Cir.1975) (stating that professionals who contribute to the preservation or recovery of a common fund should be compensated); *Gaskill v. Gordon,* 831 F.Supp. 631, 632 (N.D.Ill.1993), *aff'd,* 28 F.3d 654 (7th Cir.1994) (explaining that costs and expenses of a receivership, "including compensation for the receiver, counsel fees, and obligations incurred by him in the discharge of his duties, constitute a first charge against the property or funds in the receivership"); *see also* (Fee Pet. at 16) (conceding that the common fund doctrine would be appropriate method in this case).

In ruling on any fee petition, the ultimate goal is to reasonably compensate the professionals for their efforts. *In re Continental Ill. Sec. Litig.,* 962 F.2d 566, 572–73 (7th Cir.1992). However, when counsel petition for compensation from a common fund created for their clients' benefit, "the court becomes the fiduciary for the fund's beneficiaries and must carefully monitor disbursement to the attorneys by scrutinizing the fee applications." *Skelton v. General Motors Corp.,* 860 F.2d 250, 253 (7th Cir.1988), *cert. denied,* 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). This policy of ensuring that the class obtains more than a token recovery is equally as strong as the policy of fairly rewarding professionals. *Spicer v. Chicago Bd. Options Exchange,* 844 F.Supp. 1226, 1250 (N.D.Ill.1993) (" 'What is left for

the class, after fees have been awarded, is always a paramount consideration.' ") (quoting *In re Superior Beverage/Glass Container,* 133 F.R.D. 119, 126 (N.D.Ill.1990)).

The court has considerable discretion in fashioning a fee award that is appropriate under the circumstances. *Gaskill v. Gordon,* 27 F.3d 248, 253 (7th Cir.1994) (citing *Crites, Inc. v. Prudential Ins. Co.,* 322 U.S. 408, 418, 64 S.Ct. 1075, 1081, 88 L.Ed. 1356 (1944)). "[T]he court may consider all of the factors involved in the particular receivership." *Gaskill,* 27 F.3d at 253. Relevant factors include (1) the results achieved; (2) the time, labor and skill required in the proper performance of the duties imposed on the receiver; (3) the fair value of such time, labor and skill measured by conservative business standards; and (4) the degree of efficiency with which the work is completed. *See, e.g., United States v. Code Prods. Corp.,* 362 F.2d 669, 673 (3d Cir.1966); *Donovan v. Robbins,* 588 F.Supp. 1268, 1272 (N.D.Ill. 1984). In weighing these factors, a court should be mindful of the need to provide an incentive to prosecute the action. If plaintiffs cannot obtain appropriate judgments, they will not seek attorneys and accountants to enforce their rights. Conversely, professionals will not represent plaintiffs unless they are reasonably compensated for their services. With these legal and policy considerations in mind, the court turns to the professionals' motion to reconsider.

## A. PERCENTAGE-OF-THE-FUND VS. LODESTAR

While there is "no one correct formula for determining a fee award," *Evans v. City of Evanston,* 941 F.2d 473, 477 (7th Cir.1991), *cert. denied,* 505 U.S. 1219, 112 S.Ct. 3028, 120 L.Ed.2d 899 (1992), there are two generally accepted methods of calculating the amount of fees that counsel may recover from a common fund: the "lodestar method" and the "percentage of the fund method." *Florin v. Nationsbank of Georgia,* 34 F.3d 560, 565 (7th Cir.1994); *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1265–66 (D.C.Cir.1993). Under the lodestar method, the fee award is calculated by multiplying

"the number of hours reasonably expended on the litigation times a reasonable hourly fee." *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984); *Florin,* 34 F.3d at 562 n. 3. In contrast, under the percentage of the fund method, the attorneys are paid a reasonable "percentage of the fund bestowed on the class." *Blum,* 465 U.S. at 900 n. 16, 104 S.Ct. at 1550 n. 16. In fashioning an appropriate award in a common fund case, a district court may choose either the percentage method or the lodestar method. *Florin,* 34 F.3d at 566; *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 974 (7th Cir. 1991); *Kirchoff v. Flynn,* 786 F.2d 320, 329 n. 1 (7th Cir.1986); *see also* (Fee Pet. at 17) (proposing that fees in this case be calculated either by the lodestar or percentage method).

■ The professionals first contend that the court erred by calculating their fee according to the percentage of the fund method rather than the lodestar method. The professionals argue that since this case involves a receivership, the lodestar method must be used. (Pet.Mem. at 1–3.) The court's own extensive research has uncovered no case holding that receivership fee calculations require use of the lodestar method. Nor has counsel directed the court to a case holding that the percentage of the fund doctrine is an inappropriate method of calculating professional fees in receivership cases.

■ The United States Supreme Court has suggested that "there is no precise rule or formula for determining what is a reasonable attorney's fee." *Evans v. Jeff D.,* 475 U.S. 717, 735–36, 106 S.Ct. 1531, 1542, 89 L.Ed.2d 747 (1986); *see also Evans v. City of Evanston,* 941 F.2d at 477 (stating that there is "no one correct formula for determining a fee award"). In this court's view, rigid application of the lodestar method is not required in receivership cases. The percentage of the fund method can be just as effective as the lodestar method at determining a reasonable fee since, under either method, the court must consider all of the circumstances of the case. *Donovan,* 588 F.Supp. at 1272.

In addition, use of the percentage method in this case provides considerable advantages over the lodestar. First, the percentage of the fund method saves the court the time it would have to spend reviewing eight years of billing documents. *See Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983) (stating that fee requests "should not result in a second major litigation"). By employing the common-fund analysis, the court can "dispose of this last issue in these prolonged proceedings as expeditiously as possible." *First Securities,* 528 F.2d at 454.

More importantly, the percentage of the fund method provides a more effective way of determining whether the hours expended were reasonable. This is because, where there is a foreseeable limit to the amount of money that can be recovered, a court can assume that professionals do not expect to recover a disproportionate share of the fund. Rather, courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win. *See In re Taxman,* 49 F.3d 310, 315 (7th Cir.1995) (explaining that fiduciaries of an estate must make careful judgments about whether the number of billable hours that will be invested are commensurate with the expected gain). The lodestar method will not necessarily reveal poor economic decisions; whereas, the percentage of the fund will. That is, where the lodestar calculation results in fees that are noticeably disproportionate to the fund available for distribution, there is a good possibility that inefficient decisions were made along the way. The percentage of the fund method provides an efficient check on the attorney's judgment because it informs the court that the professionals could have regulated their expenses better—without requiring the court to micromanage the litigation. In a complicated case such as this where the professionals needed to make cost-effective decisions with respect to many different properties, the percentage of the fund method is the most practical and accurate way to ensure that the fees are reasonable.

## B. THE AMOUNT OF THE AWARD

■ Alternatively, the professionals argue that, even if the use of the percentage of the fund method was proper, the court un-

derstated the value of the available fund.[2] Specifically, the professionals insist that the court should have added the nearly ten million dollars paid to creditors during the course of the receivership. Under traditional common fund principles, payments to creditors would not be factored into the percentage calculation. Rather, a percentage of the fund is calculated by awarding a reasonable "percentage of the fund bestowed on the class." *Blum,* 465 U.S. at 900 n. 16, 104 S.Ct. at 1550 n. 16; *In re Thirteen Appeals,* 56 F.3d 295, 305 (1st Cir.1995); *Spicer,* 844 F.Supp. at 1251; *see also United Steelworkers of America v. Sadlowski,* 435 U.S. 977, 978, 98 S.Ct. 1627, 1627, 56 L.Ed.2d 71 (1978) (White, J., dissenting) (explaining that common fund percentage fee awards are allocated from the funds won for the class). The amount the professionals seek to add to the common fund was never "bestowed upon the class," instead, this money was used to pay creditors. The court therefore adheres to its previous ruling that $20,956,000 constitutes the "available fund."

■ Nevertheless, the court concedes that this is not the typical fund scenario. In a typical common fund case, such as a class action, defendant pays a sum in settlement for distribution to the class. In this case, the professionals received from defendants various neglected and unprofitable properties that needed to be managed, improved, and sold before any money could be distributed. In the prior opinion, the court recognized that this fund was atypical, and selected 33% as a fair measure of the value of the professionals services. (*See* Mem.Opinion and Order at 9–10.) Having reconsidered the issue, the court believes that this percentage does not fully account for the nature of the work these professionals were required to perform.

On a day-to-day basis, the professionals in this case enjoyed less discretion than typical common fund professionals. Specifically, be- cause of the chaotic state of the Gordon and Boula empire and the nature of the assets, these professionals needed to spend more time than usual improving the properties and discharging debt in order to accumulate a fund for distribution. Nobody in the class could recover and none of the professionals could be compensated unless and until the professionals removed the liens from the properties and cleared titles. The court believes that, given the extent of the problems with the properties, these professionals should receive a share of the fund that is higher than that awarded in the typical common fund case.

■ Nevertheless, the circumstances in this case preclude the court from awarding the professionals the entire amount they seek. As one court has stated:

> [T]he size of the fund recovered on behalf of the class should act to impose a cap on the amount of attorneys' fees that may be recovered by class counsel where straight lodestar compensation would consume an inordinate share of the common fund. This principle is a central factor in determining what constitutes a fair and reasonable fee award....

*Spicer,* 844 F.Supp. at 1250 (citing *In re Superior Beverage/Glass Container,* 133 F.R.D. at 126). A court has a duty to ensure that the professionals' fee award is reasonable vis a vis the plaintiff class. *Skelton,* 860 F.2d at 253; *In re Fine Paper Antitrust Litigation,* 751 F.2d 562, 583 (3d Cir.1984). If the court were to award the professionals the full $10,068,579 they have requested, the professionals would collect 48 percent of the available $20,956,000 fund. To award nearly half of the available funds would bestow a windfall upon the professionals and do an injustice to the class. In short, a fee award of this proportion is simply not reasonable.[3]

2. The professionals do not contest the reasonableness of the percentage chosen by the court.

3. The court again rejects the professionals' argument that they should be compensated for their time preparing fee petitions and supporting documentation. As the court stated in its prior Memorandum Opinion and Order, "time spent obtaining attorney's fees in common fund cases does nothing to benefit the plaintiff class." (Mem.Opinion & Order dated Dec. 11, 1995 at 10.); *see also First Securities,* 528 F.2d at 453 (explaining that fees should be awarded for actions benefitting the receivership estate).

Having reconsidered all of the factors of this case, the court concludes that the professionals should recover 38% of the total fund available for distribution. This award reflects an increase of five percent over the court's original award of 33% and exceeds the range of most common fund fee awards. *See Swedish Hosp. Corp.*, 1 F.3d at 1272 (noting that common fund awards typically fall between twenty and thirty percent); *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir.1991); *In re Activision Securities Litig.*, 723 F.Supp. 1373, 1377–78 (N.D.Cal.1989) (surveying common fund awards and concluding that "nearly all common fund awards range around 30% even after thorough application of ... the lodestar"). Adding this additional $1,047,800 to the court's previous award, the professionals' total fee award is $7,963,280.[4] For the reasons explained in this order, the court believes this is a generous fee award.

In ruling on this fee petition, the court has struggled to do justice to the class members and the professionals. Many of the class members lost their entire life savings when they decided to invest with Gordon and Boula. However, through the efforts of these professionals, much of the money has been recovered. When all is said and done, the court can slice the pieces of this pie only so large. Gordon and Boula are to blame for the fact that the slices are so small. Had the professionals not persisted in their efforts; however, the pie would have been even smaller.

### Conclusion

The motion to reconsider is granted. In sum, the receiver is authorized to pay the professionals an additional $1,047,800 in fees. The remainder shall be promptly distributed to the class. The professionals are instructed to divide the fee award as they agree.

---

4. The court notes that the attorneys separately requested $137,000 for legal work they did for the class prior to the receivership. The present increase of the professionals' fees adequately compensates the attorneys for that work.