**WALCO INVESTMENTS, INC.,
et al., Plaintiffs,**

v.

**Kenneth THENEN, et al., Defendants.**

**No. 93–2534–CIV.**

United States District Court,
S.D. Florida.

July 18, 1997.

Harley S. Tropin, Miami, FL, Receiver for Premium Sales Corp.

Marc Cooper, Cooper & Wolfe, P.A., Miami, FL, for the Receiver.

Michael A. Hanzman, Alan H. Rolnick, Hanzman, Criden, Korge & Chaykin, P.A., Miami, FL, for the Plaintiffs and the Plaintiffs Steering Committee.

Dean Colson, Joseph M. Matthews, Enid Duany Mendoza, Colson, Hicks, Eidson, Colson & Matthews, P.A., Miami, FL, David Berger, Stephen Whinston, Berger & Montague, P.C., Philadelphia, PA, for the Steering Committee.

Mark P. Schnapp, Holly Skolnick, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, FL, for Deckelbaum Defendants.

Jane W. Moscowitz, Baker & Moscowitz, Miami, FL, PSEC Defendants.

Isaac J. Mitrani, Mitrani, Rynor & Gallegos, P.A., Miami, FL, for Sherry Walde.

James B. Tilghman, Stewart, Tilghman, Fox & Bianchi, P.A., Miami, FL, William C. Hearon, Miami, FL, for Lipson Stern Partnerships.

Jeffrey M. Weissman, Ft. Lauderdale, FL, for Sheila Klee and Ira Posner.

John A. DeVault III, Bedell, Dittmar, DeVault, Pillans & Coxe, P.A., Jacksonville, FL, for Objecting Class Members.

Aaron Podhurst, Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, FL, for Liason Entities.

Stanley A. Beiley, Hornsby, Sacher, Zelman, Stanton, Paul & Beiley, P.A., Miami, FL, Barry D. Hunter, Brown, Todd & Heyburn, PLLC, Lexington, KY, for Premium Sales, 1990 Ltd.; Premium Special Purchases, Ltd.; Premium Income Advantage Fund, Ltd.; Can–Am and General Partnership of Sherry Walde.

## ORDER AWARDING ATTORNEYS' FEES

MORENO, District Judge.

Counsel for the Plaintiffs and other related parties seek an additional $16,000,000 in attorneys' fees as compensation for their efforts in representing over sixteen hundred individuals in this class action suit brought against multiple defendants. Combining the requested compensation with the $7,525,200 in interim fees previously awarded, see Appendix, Table I, the attorneys' total fee request represents 16.67%[1] of the more than $141 million common fund, see Appendix, Table II. The class members and the Creditors Committee from the related Bankruptcy Court case agree that the attorneys should receive additional compensation, but argue that the total attorneys' fees should be based on a lower percentage of the common fund. For the reasons discussed below, the Court concludes that 15% of the common fund, or $21,178,277, is a reasonable attorneys' fee for the work performed in this case. Since the Court previously awarded interim attorneys' fees totaling $7,525,200, the award represents an additional $13,653,077 in attorneys' fees.

### I. BACKGROUND

A history of these proceedings can be found in three published opinions.[2] Succinctly stated, the class plaintiffs were defrauded into investing in a largely fictitious grocery diverting operation ("Premium") in which the funds of new investors were used to pay earlier investors (a "Ponzi scheme"). The final class action complaint alleges that Premium's corporate officers, as well as the promoters of the intermediary funding entities,

---

1. Although the Joint Final Petition for Enhanced Attorneys' Fee indicates that "the enhancement, combined with the reduced hourly fees paid to date, will amount to a total attorneys' fee of sixteen point two percent (16.2%) of the common fund," the petitioner's failed to include the attorneys' fees previously awarded to Thomas Tew, Jane Moscowitz, and Isaac Mitrani in the calculus.

2. See · Walco v. Thenen, 881 F.Supp. 1576 (S.D.Fla.1995) (order denying Baker & McKenzie's motion to dismiss and Cadwalader, Wickersham & Taft's motion for judgment on the pleadings); 168 F.R.D. 315 (S.D.Fla.1996) (order granting the plaintiffs' motion for class certification); and 947 F.Supp. 491 (S.D.Fla.1996) (order denying defendants' motion for summary judgment regarding the standing of the class).

either participated in or had knowledge of the fraudulent scheme involving non-existing grocery diverting transactions. The class also sought recovery from the various grocers for the actions of their agents in confirming the fictitious grocery transactions, from a bank for masking the illegal flow of funds, and from two law firms for negligently preparing private placement memoranda upon which the investors relied. Through four years of bitterly-contested litigation, the Plaintiffs' attorneys recovered more than $141 million from the various defendants which, when combined with the recovery in the companion case in Bankruptcy Court, represents approximately 55–60% of the investors' total loss.[3] At issue here is the fee that should be awarded to the attorneys for their enormously successful efforts in this district court proceeding.

At the outset of this case the Court asked the parties for their guidance in establishing a framework for the provision of attorneys' fees. Class counsel requested a pure contingency fee, but the court-appointed Receiver objected, proposing instead a hybrid fee arrangement whereby the attorneys would receive interim payments at a substantially reduced hourly rate with a final enhancement or reduction of fees based on the amount recovered. After some deliberation, the Court rejected the pure contingency fee approach in favor of this hybrid fee arrangement.

Over the following four years the Court meticulously and prudently reviewed the attorneys' periodic submissions of interim fee requests, denying more than $270,000 of the requested attorneys' fees over this time period. In addition, the Court refused to reimburse more than $200,000 requested as costs for such expenses as computerized legal research, couriers, and trial consultants, which are routinely and properly charged to private clients. Furthermore, since fees for the time spent preparing fee applications and litigating fee disputes are not compensable in common fund cases, the Court refused to award attorneys' fees for the time spent preparing and arguing attorneys' fees. *See Kinney v. International Brotherhood of Elec. Workers,* 939 F.2d 690, 694 n.5 (9th Cir.1991); *In re Fine Paper Antitrust Litigation,* 751 F.2d 562, 595 (3rd Cir.1984). After accounting for all of these deductions, the Court approved interim attorneys' fees payments totaling $7,525,200. In requesting the fee enhancement, counsel for the plaintiffs and other related parties agree that they will not request additional interim fees, will not seek any further compensation for any litigation arising out of the now-dismissed third-party complaint, and will not request any fee enhancement in the related Bankruptcy Court case.

## II. *THE STANDARD*

In *Camden I Condominium Ass'n., Inc. v. Dunkle,* 946 F.2d 768, 774–75 (11th Cir.1991), the Eleventh Circuit held that attorneys' fees in common fund cases must be based on a reasonable percentage of the fund established for the benefit of the class. The Court noted that while "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee," 25% of the common fund is a "benchmark" which "may be adjusted in accordance with the individual circumstances of each case." *Id.*

Objectors Ira Posner and Sheila Klee, relying on the Florida Bar Rules and a recent Florida Supreme Court case, *Kuhnlein v. Department of Revenue,* 662 So.2d 308 (Fla. 1995), argue that the Court should apply Florida law rather than *Camden I* because

---

**3.** The total value of the settlements contained in the common fund is uncertain because three of the general categories of settlements, including the settlements reached with the Sazant Funding Entities ($5,000,000), the cash value of waived claims ($15,000,000), and the tax refunds to Promoters assigned to the Estate ($1,500,000), are approximations. Indeed, counsel for the plaintiffs and other related parties indicate that the cash value of waived claims is significantly higher and the value of the assigned tax refunds will likely be slightly greater than the estimate. Nevertheless, all involved parties agree that the total value of the common fund exceeds $141,188,152. Counsel for the plaintiffs and other related parties agree that the reasonable attorneys' fees will be based on this estimate of the value of the common fund, and that no additional request for attorneys' fees will be made even if the Court's award of additional attorneys' fees is less than $16 million and the final, actual value of the common fund exceeds $141,188,512.

this case involved issues of state law. In *Kuhnlein,* the Supreme Court of Florida specifically rejected *Camden I* and adopted the lodestar[4] method for calculating attorneys' fees in common fund cases. Although the Court respects *Kuhnlein*'s admonition that the *Camden I* approach "lends itself to fee-setting in which a percentage may be arbitrarily chosen and thereafter justified by a boiler-plate recitation of the factors enumerated in that decision," *see id.* at 313, the Court is bound by the Eleventh Circuit analysis in *Camden I* because the federal claims dominated the state claims raised in this proceeding.

■ The objectors also argue that the Court should apply a sliding scale for attorneys' fee awards in common fund, even though the Eleventh Circuit in *Camden I* failed to specifically list this as a factor in calculating the appropriate attorneys' fee. The objectors rely on the Third Circuit Task Force, which concluded that "absent unusual circumstances the percentage will decrease as the size of the fund increases." *Third Circuit Task Force on Court Awarded Attorney Fees,* 108 F.R.D. 237, 239 (1985). This is true, the objectors argue, because "the effort necessary to achieve recovery dollars at the high end [is] less onerous, on a sliding scale, than the effort expended for recovering the threshold sums...." *Newberg on Class Actions,* § 14.03 at 14–14 (3d ed.1992).

While application of the sliding scale approach may be warranted in most mega-fund cases, the policy underlying that method of calculation largely dictates its inapplicability here. The plaintiffs in this case sought recovery from multiple defendants who, at best, could only be loosely grouped together into four broad categories, and while there was some overlap in discovery, the claims raised against each category of defendants presented separate issues of fact and law and involved differing theories of recovery. The sliding scale approach is incompatible with these events because just as much effort and skill were needed to obtain the recovery se-

cured late in the course of these proceedings as were needed to achieve the recovery acquired early in the litigation. Given the fragmented litigation against the diverse groups of defendants, suits brought against a single defendant provide little persuasive authority.

### III. *APPLICATION*

■ ⸰ The petitioning attorneys and the objectors filed affidavits and presented evidence from a wide range of credible authorities—including two former federal judges, a University scholar, and prominent experienced attorneys—to assist the Court in formulating a reasonable percentage of the common fund to be awarded as attorneys' fees. While the witnesses' legal backgrounds are impressive, it is extremely difficult for even a respected practicing attorney or an academic with the highest credentials to review the voluminous files for a few hours or even days and reach a definite conclusion on the value of the attorneys' work. Because the Court continually evaluated the case over a period of four years, and is intimately familiar with the facts and circumstances surrounding its progress, the Court's assessment of the reasonable fee is based upon an independent analysis.

In *Camden I,* the Eleventh Circuit discussed the non-exclusive factors a court should consider in selecting the appropriate percentage of a common fund which may reasonably be awarded as a fee. Although the Court rejected the lodestar approach, the Court agreed "that the *Johnson* factors continue to be appropriately used in evaluating, setting, and reviewing percentage fee awards in common fund cases." *Camden I,* 946 F.2d at 775. These factors include the time and labor required; the novelty and difficulty of the questions; the skill required to perform the legal services properly; the preclusion of other employment; the customary fee; whether the fee is fixed or contingent; the time limitations imposed by the client or the circumstances; the amount involved and the

---

4. Under the lodestar approach, the Court calculates the number of hours the attorneys reasonably expended in litigating the case and multiplies this total by the prevailing hourly rate in the community for similar legal services. The Court then adjusts this total to reflect other factors, including the risk of contingency and the quality of representation.

results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). Furthermore, courts must also consider "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Camden I*, 946 F.2d at 775. Finally, the Eleventh Circuit encouraged the lower courts to consider additional factors unique to the particular case. *Id.*

The Court previously conducted a partial *Johnson*–factor analysis by scrutinizing the interim fee requests and awarding fees only for the time that the attorneys legitimately spent litigating this case. Although the Court awarded interim fees based on reduced hourly rates, the customary fee for litigating novel and difficult legal issues such as those presented in this case,[5] and for which only extremely skilled attorneys could properly perform, is the standard hourly rate normally charged by these highly-specialized attorneys. The petitioning attorneys are experienced, diligent, and reputable. Given the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results.

The economics involved in prosecuting this class action factor significantly into the Court's award. Unlike other common fund cases, this Court established a unique hybrid fee structure, pursuant to which the attorneys were consistently paid interim fees, albeit at a reduced rate. These interim fees, together with a potential "enhancement," were contingent on a favorable recovery. However, even counsel admit that the return

of interim fees was not likely, and since the attorneys were not paid on a pure contingency fee basis, the incentives for efficiency that justify a percentage fee award were not fully in place. Nevertheless, the Court denied interim fee requests for unnecessary labor, and the attorneys were undoubtedly motivated by *Camden I*'s mandate that the reasonable attorneys' fee would be based, at least in part, on the amount of the total recovery.

Other considerations have factored into the calculus. This was a high profile case, and the attorneys, particularly the Receiver, received great value, both monetary and intrinsic, from the media's extensive coverage of these proceedings. Further, while the Plaintiffs' attorneys were unable to accept every request for representation while they labored on this case, the presence of a consistently paying client for four years, even at a reduced hourly rate, would warm the heart, let alone the pocketbook, of even the most successful securities litigator. In addition, the attorneys will benefit from lengthy relationships with some of the more than sixteen hundred clients they successfully represented. In this regard, the Court further notes that none of the class members objected to any of the settlement terms, although a minority did object to the size of the attorneys' fee.

Finally, the Court has also evaluated attorneys' fees awarded in similar common fund cases. The cases which the Court finds most persuasive are those involving the award of interim fees. However, the parties have presented only a handful of published opinions. *See In re FPI/Agretech Sec. Litig.*, 105 F.3d 469 (9th Cir.1997)(30%); *In re Washington Pub. Power Supply Sys., Sec. Litig.*, 19 F.3d 1291 (9th Cir.1994) (5%); *Gaskill v. Gordon*, 942 F.Supp. 382 (N.D.Ill.1996) (38%); *In re Superior Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119 (N.D.Ill.1990) (22%); *Bogosian v. Gulf Oil Corp.*, 621 F.Supp. 27

---

5. The challenging legal issues presented in this case are too numerous to list fully. As one illustration, the Court notes that the Plaintiffs' attorneys persuaded this Court to reject the ruling of another court in this same district, which held that attorneys do not have the same duties as other professionals, like accountants and securities brokers and only act as a conduit for the

client's opinions. *In re Cascade Int'l Securities Litigation*, 840 F.Supp. 1558 (S.D.Fla.1993). The arguments of Plaintiffs' counsel on this issue were instrumental in the recovery of an additional $30 million settlement with the law firm Defendants, an amount which represents more than 140% of the total attorneys' fee awarded in this case.

(E.D.Pa.1985) (22%); *Harmsen v. Smith*, No. 73–0460–E, No. 74–0345–E, 1985 WL 5824 (S.D.Cal. September 30, 1985) (26%); *In re Ampicillin Antitrust Litig.*, 526 F.Supp. 494 (D.D.C.1981) (22%).

Selecting the appropriate percentage fee award, even after analyzing the appropriate factors, is an extraordinarily difficult task. What at first blush appeared to be a simple issue has presented as much difficulty as prior interpretations of *Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), *Winston C. Spencer v. Assurance Co. of America*, 39 F.3d 1146 (11th Cir.1994), *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2nd Cir. 1994), *In re Sunrise Securities Litigation*, 916 F.2d 874 (3d Cir.1990), *Dosdourian v. Carsten*, 624 So.2d 241 (Fla.1993), and Rule 23 of the Federal Rules of Civil Procedure. The Court has struggled with this issue for weeks, reviewed the parties' submissions, searched for structure in precedent, and looked for guidance in *Camden I*. Having considered all of the relevant factors, and admittedly applying the discretion implicit in *Camden I*, the Court concludes that 15% is a reasonable fee award in this common fund case, and therefore awards the attorneys an additional $13,653,077 in attorneys' fees.[6]

## IV. DISTRIBUTION OF ATTORNEYS' FEES

The Court adopts the agreed distribution plan for the enhancement fee submitted by the petitioning attorneys with slight modification. *See* Appendix, Table III. Three individuals contributed to the litigation yet did not join in the attorneys' fee request, including Thomas Tew, Jane Moscowitz, and Isaac Mitrani. Thomas Tew, the interim Receiver, and his counsel, contributed to the litigation for more than one year and therefore, in fairness, should also share in the total attorneys' fee award. While Jane Moscowitz's

billable hours were less numerous, she was also awarded fees at less than her standard hourly rate. Therefore, the Court finds that the Tew and Moscowitz firms are entitled to $194,308 and $9,738 in additional attorneys' fees, respectively, which represents 94% and 97%[7] of the difference between the amount of attorneys' fees they requested at the reduced rate and the amount they would have requested had they billed at their standard hourly rates. Because Isaac Mitrani's interim attorneys' fee request was granted in full at his standard hourly rate, he did not request, and the Court declines to award, any additional attorneys' fee.

The additional attorneys' fee awarded to the law firms of Thomas Tew and Jane Moscowitz shall be deducted from the additional attorneys' fee in the same proportions as the agreed allocation. More importantly, the Court STAYS any distribution of the additional attorneys' fees until the common fund has been distributed to the members of the class. This stay shall be lifted only by order of the Court upon proof that this condition precedent has occurred. The Court reserves the right to extend the stay until the litigation arising out of the now-dismissed third-party complaint is resolved.

## V. CONCLUSION

When the members of the class entered this courthouse four years ago, they perceived their case as weak and had little hope of recovery. Now, as the class prepares to leave the courthouse with a recovery vastly exceeding their initial expectations, a few class members object to the extent of the "enhancement" requested by their foot soldiers. The Court would give greater weight to these objections were they voiced at the same decibel level when there was little hope of recovery.

The Court's adoption of the hybrid fee arrangement greatly benefitted the victim-

---

6. The Court notes that adjusting the reduced hourly rate to the customary hourly rate yields approximately $11.4 million. Applying a 1.8 multiplier to this lodestar, which would be appropriate given the difficulty of the case and the results achieved, would result in the amount approved by the Court. Therefore, under the facts of this unique case, the amount of attorneys' fees approved is identical under both Florida and Eleventh Circuit law.

7. The firm of Thomas Tew was awarded 92% of the $608,959 requested plus $54,182 in costs. The firm of Jane Moscowitz was awarded 97% of the $35,855 requested.

ized investors; if the Court were to apply the *Camden I* benchmark of 25%, the attorneys' fees in this case would total $35.5 million. Attorneys' fees in complex securities litigation cannot be bartered like a used article in a garage sale or flea market, but even if they could, the award of 15% of the common fund is a bargain that the educated, victimized investors would have negotiated in a "New York second" during those sordid days four years ago when they discovered the fraudulent scheme.

## APPENDIX

### I. *INTERIM ATTORNEY'S FEES PREVIOUSLY AWARDED*
(all figures rounded to the nearest dollar)

| Law Firm | A. The amount of interim attorneys' fees requested by the parties at the reduced hourly rate approved by the Court. | B. The amount of interim attorneys' fees previously awarded by the Court. | C. The amount of interim attorneys' fees the parties would have received had the Court calculated the interim payments based on the parties' standard hourly rates. The Court has deducted from this total, on the same percentage basis, the attorneys' fees requested but denied on an interim basis. | D. The difference between Column C and Column B. |
|---|---|---|---|---|
| Kozyak, Tropin and Throckmorton, P.A. | $ 2,345,065 | $ 2,334,045 | $ 3,472,263 | $ 1,138,218 |
| Harley Tropin, individually | $ 775,580 | $ 773,360 | $ 1,222,722 | $ 449,362 |
| Thomas Tew | $ 608,959 | $ 573,520 | $ 767,828 | $ 194,308 |
| Hanzman, Criden Korge & Chaykin, P.A. | $ 684,244 | $ 646,506 | $ 1,063,423 | $ 416,917 |
| Cooper & Wolfe, P.A. | $ 545,833 | $ 545,163 | $ 780,606 | $ 235,443 |
| Colson, Hicks, Colson, Eidson & Matthews, P.A. | $ 920,644 | $ 805,011 | $ 1,004,323 | $ 199,312 |
| Berger & Montague, P.C. | $ 534,293 | $ 493,016 | $ 1,169,421 | $ 676,405 |
| Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin | $ 154,700 | $ 154,700 | $ 556,825 This total is based on attorney Aaron Podhurst's sworn representation that the firm only submitted interim attorneys' fee requests for half of the work performed. | $ 402,125 |
| Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A. | $ 169,908 | $ 169,908 | $ 254,879 | $ 84,971 |
| Hornsby, Sacher, Zelman, Stanton, Paul & Beiley, P.A., and Brown Todd & Heyburn, PLLC | $ 541,295 | $ 509,300 | $ 702,054 | $ 192,754 |
| Stewart, Tilghman, Fox & Bianchi, P.A. | $ 149,880 | $ 148,560 | $ 259,886 | $ 111,326 |
| William C. Hearon, P.A. | $ 324,810 | $ 323,490 | $ 404,362 | $ 80,872 |
| Jane Moscowitz | $ 35,855 | $ 34,775 | $ 44,513 | $ 9,738 |
| Isaac Mitrani | $ 13,846 | $ 13,846 | $ 13,846 | $ 0 |
| TOTALS | $ 7,804,912 | $ 7,525,200 | $ 11,716,951 | $ 4,191,751 |

## II. *SETTLEMENTS GENERATING THE COMMON FUND*

| Settling Defendant | Amount of Settlement |
|---|---|
| Baker & McKenzie | $ 20,000,000 |
| Malone & Hyde | $ 19,500,000.00 (plus $500,000 in costs to be reimbursed to Plaintiffs) |
| Value of Waived Claims | $ 15,000,000 (approximate) |
| Long's Drugs of California | $ 13,000,000 |
| Cadwalader, Wickersham & Taft | $ 10,000,000 |
| The Vons Companies | $ 10,000,000 |
| Samuel Schwartz | $ 8,250,000 |
| The Insider Defendants | $ 7,600,000 |
| Henry Weitzman | $ 6,000,000 |
| Fry's Food Stores of Arizona | $ 5,100,010 |
| Sazant Funding Entities | $ 5,000,000 (approximate) |
| Larry S. Sazant, Neil S. Sazant and Sherry Walde | $ 4,605,000 |
| Morton, Gerald and Mitchell Deckelbaum | $ 3,533,630 |
| Jerome Stern, Arthur Lipson, Estate of Murray Blattman and Estate of Herbert Tannenbaum | $ 3,350,000 |
| Pueblo International, Inc. | $ 3,000,000 |
| County National Bank and F. Larry Robinette | $ 3,000,000 |
| Assigned Tax Refunds | $ 1,500,000 (approximate) |
| Zvi Yuz and Peter Arak | $ 876,000 |
| Kenneth Schwartz and Lester Engel | $ 570,872 |
| Irwin Altman and Harris Mitchell | $ 425,000 |
| Gary Burman and Steven Bornstein | $ 200,000 |
| Dean Henricks | $ 168,000 |
| Stanford Trading Corporation | $ 10,000 |
| TOTAL | $ 141,188,512 |

## III. *ATTORNEYS' FEES AWARDED*
(all figures rounded to the nearest dollar)

| Law Firm | Interim attorneys' fees previously awarded | Agreed allocation of additional attorneys' fees | Additional attorneys' fees awarded | Total attorneys' fees awarded |
|---|---|---|---|---|
| Kozyak, Tropin and Throckmorton, P.A. | $ 2,334,045 | 33.75% | $ 4,539,048 | $ 6,873,093 |
| Harley Tropin, individually | $ 773,360 | included in total for Kozyak, Tropin, and Throckmortin, P.A. | — | $ 773,360 |

| | | | | |
|---|---|---|---|---|
| Thomas Tew | $ 573,520 | N/A | $ 194,308 | $ 767,828 |
| Hanzman, Criden, Korge and Chaykin, P.A. | $ 646,506 | 11.25% | $ 1,513,016 | $ 2,159,522 |
| Cooper & Wolfe, P.A. | $ 545,163 | 10.50% | $ 1,412,148 | $ 1,957,311 |
| Colson, Hicks, Colson, Eidson and Matthews, P.A. | $ 805,011 | 11.25% | $ 1,513,016 | $ 2,318,027 |
| Berger & Montague, P.C. | $ 493,016 | 11.25% | $ 1,513,016 | $ 2,006,032 |
| Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin | $ 154,700 | 8.00% | $ 1,075,922 | $ 1,230,622 |
| Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A. | $ 169,908 | 1.00% | $ 134,490 | $ 304,398 |
| Hornsby, Sacher, Zelman, Stanton, Paul & Beiley, P.A., and Brown, Todd & Heyburn, PLLC | $ 509,300 | 5.00% | $ 672,452 | $ 1,181,752 |
| Stewart, Tilghman, Fox & Bianchi, P.A. | $ 148,560 | 8.00% | $ 1,075,922 | $ 1,224,482 |
| William C. Hearon, P.A. | $ 323,490 | included in total for Stewart, Tilghman, Fox & Bianchi, P.A. | — | $ 323,490 |
| Jane Moscowitz | $ 34,775 | N/A | $ 9,738 | $ 44,513 |
| Isaac Mitrani | $ 13,846 | N/A | — | $ 13,846 |
| TOTALS | $ 7,525,200 | 100.00% | $ 13,653,077 | $ 21,178,277 |